Marvin, J.
The facts, as found by the jury, may be Briefly stated. The plaintiff made the note payable to the order of Robert Jones, for the accommodation of James Jones & Co., and Robert endorsed for their accommodation. The note was to be offered for discount at the Manhattan Bank, and if discounted the proceeds were to be used in paying notes made by James Jones & Co., and upon which the plaintiff and Robert Jones were liable as endorsers. The Manhattan Bank refused to discount the note. The defendant, Mathews, took the note and converted and appropriated it, procuring it to be discounted at a bank without the knowledge or consent of the plaintiff, or of James Jones & Co. And the jury have negatived any ratification by the plaintiff of the act of the defendant.
It is not material to inquire whether James Jones & Cowere restricted to the use of the note at the Manhattan Bank ; the material restriction was, that it should be used to raise money with which to pay off notes upon which the plaintiff and Robert Jones were liable as accommodation endorsers. Jones & Co. had no right to use the note for any other purpose. There was evidence authorizing the jury to find that after the note had been presented by Jones & Co. to the Manhattan Bank for discount, and the bank had refused to discount it, Jones & Co. notified the plaintiff of these facts and requested him to call and get the note, and that he, a few days thereafter, called for it. In the meantime the defendant had taken it. This would show that Jones & Co. made no further claim to the note, and that the plaintiff claimed the right to have it surrendered to him. The judge submitted the question to the jury, whether the plaintiff was the owner of the note at the time of the alleged conversion; by which I understand him to nave submitted whether the plaintiff was at that time entitled to the possession of the note as against J ones & Co.; not whether the note, at that time, in the hands of Jones & Co. was of any value, or that any one had any property *319 in it. The note, in the hands of any one not a bona fide holder, was without value; and it may be conceded that had the defendant destroyed it, no action could have been maintained against him by the plaintiff. But the defendant Mathews took the note, and by his wrongful act caused it to become valuable in the hands of a bona fide holder, and he received, as the fruit of his wrongful act, the full amount of such value, and made the plaintiff liable therefor. And herein is the gravamen of the action.
In Murray et al. v. Burling (10 J. R., 172), the action was trover for the conversion of a note made by the plaintiffs. The note was handed to the defendant to procure the money upon it from a third person. Instead of doing this, he used the note for another purpose. It was held that he was liable. While the note remained in the hands of Burling, it could not be enforced against the makers. It was of no more value than the note in the present case at the time Mathews took it; but by the act of passing it to a bona fide holder it became valuable. In Evans v. Kymer (1 Barn. & Adol., 528) the plaintiff was the acceptor and the bill belonged to him. It was in the possession of the drawer, and he transferred it with notice to the defendant It was held that the action could be maintained. The ease is an authority to show that it is not a good objection, that the action is brought by the maker of a note or the acceptor of the bill which has been converted.
The measure of damages was the amount which the plaintiff had been injured by the wrongful act of the defendant. The note was transferred to a bona fide holder, and the plaintiff is liable upon it; and the presumption is that he has paid it, or will pay it voluntarily, or that he will be compelled to pay it. It was his duty to the holder to pay it at maturity. He cannot relieve himself from liability without payment. It was not necessary that he should pay the note before action. His cause of action accrued immediately upon his becoming liable upon the note, and he *320 was so liable when the note was transferred to a bona fide holder. In Evans v. Kymer (supra) the plaintiff had not paid the acceptance and the objection was taken. In Murray v. Burling (supra) the plaintiff had paid the note and this objection was taken. Neither the right of action nor the measure of damages depends upon the fact of payment. It is enough if the plaintiff is liable to pay, and as the precise sum which he is liable to pay is known, there is no difficulty in fixing the amount of damages.
A general exception was taken to the entire charge. If any independent portion of the charge was correct, this exception is not available. But I see no objection to the charge, properly understood. Several requests were made to the judge to charge the jury on specified points in a particular manner. If the judge, in his charge, substantially covered these propositions, it was not error in him to refuse to charge further or different. The judge submitted to the jury correctly the matters as to which he was requested specifically to charge.
It remains to consider the sufficiency of the complaint. It was ably attacked and criticised upon the argument. It is objected that it does not state facts sufficient to entitle the plaintiff to recover the amount of the note, there being no allegation that the plaintiff had paid it or become liable on it. The objection rests upon the propositions: 1. That the paper was of no value when Mathews took it, and that it so remained until transferred to a bona fide holder; and 2. That it was necessary to aver and prove payment. These objections have been already noticed so far as the law applicable to them is concerned. It may be conceded that the note was valueless until it passed into the hands of a bona fide holder, though Evans v. Kymer (supra) seems to establish a different principle. It was not necessary to allege payment in the complaint unless it was also necessary.. to prove it on the trial. It was necessary, as I think, that the complaint should show that the note had passed into *321 the hands of a bona fide holder, as otherwise there would have been no conversion of the property of the plaintiff to his damage. In the complaint, the making of the note and the parties to it and the purpose for which it was made are stated. The complaint informs us what was done with the note prior to the defendants taking it; and, it is added, “ whereupon the plaintiff became entitled to the possession of the said note.” It was probably not necessary to state this conclusion upon the facts stated, but it can do no harm. There is no express averment in the complaint of property in the plaintiff, but the facts are stated showing that he was entitled to the note, and this is sufficient certainly after verdict. I think under the authorities already cited it would have been proper to aver property in the plaintiff.
In charging the conversion, the language is “ that the defendants converted and disposed of the note to their own use.” It is objected that this is not sufficient to show that the note had passed into the hands of a bona fide holder, so as to render the plaintiff liable upon it. It is the usual form of alleging conversion of a chattel. I certainly should have preferred a fuller statement of facts in this case, still. I think, liberally construed, the allegation is sufficient. We are required to construe pleadings under the Code liberally. The defendants converted and disposed of the note to their own use. This is equivalent to an allegation that they had negotiated the note for their own use, and in construing such an allegation, I think we should understand that it had been negotiated in the usual course of business, not that it had been hypothecated or used as a collateral security. The fact that it had been negotiated to a bona fide holder was proved upon the trial without objection.
I am of opinion that the judgment should be affirmed
Denio, J.
The most material question in this case is, whether an action in the nature of trover can be maintained for a promissory note, which, never having been negotiated *322 when the defendant took it, had not any legal inception, and where the act charged upon the defendant as a conversion is the passing of the note to a bona fide holder. Upon general principles, I should say that a note in the hands of the maker or his agent, which had not been negotiated or in any way put in circulation, or which, having been negotiated, had been afterwards taken up and returned to the maker, was not property in any such Sense as would render it the subject of larceny, or of trespass or trover ;• and that one, who should wrongfully get possession of such paper and give it vitality and value by passing it to a bona fide holder, would not be liable to such an action as the present, though the party injured could doubtless recover the damages which he might sustain by such an act, in an action in another form against the wrong doer. (Harris v. Clark, 3 Comst., 93; People v. Loomis, 4 Denio, 380.) The question, however, is one of form, and if it appears that actions of this class to redress such an injury have been sanctioned by the courts, it must be considered as an exception engrafted upon the general principle, and the fiction should be sustained, though it should not be in accordance with theoretic rules. An examination of the cases will show that the exception has been firmly established. Murray v. Burling (10 John., 172) was like the present in its essential features. The plaintiffs owed a debt which they had contracted for the accommodation of one Swan, and which would become payable on the 31st July, 1812. Swan informed them that the money to meet this engagement could be borrowed of one Kauman on the plaintiffs’ note at sixty days. The plaintiffs accordingly, on the 26th July, made their note for the amount at sixty days, payable to the order of Swan, and delivered it to him to be negotiated to Kauman for the purpose of obtaining the money. Swan delivered the note to the defendant, who undertook to get the money of Kauman, who was his brother-in-law, and give it to Swan for -the plaintiffs ; but instead of doing so, he passed it off to *323 Minturn & Champlin in payment of Ms own debt, and they procured it to be discounted at the Mechanics’ Bank. When it became due the plaintiffs took it up and brought trover against the defendant for converting it,- and it was held that the action was maintainable. Mr. Wells, of counsel for the defendant, took the same ground which is insisted on for the defendant in this case. “ How can it be said (he argued) that the maker of a note, payable to another, has any property in that note ?” The court say : “ The note was put into the defendant’s hands for a definite and specific purpose to pass to Kauman, and any other use of it was a violation of his trust. It is the abuse of trust, or the breach of such lawful possession, which constitutes the conversion.” This case would be a precedent for the present action, if it had appeared that the defendant, -knowing the object for which the note was made, had acted with the assent of Jones & Co. in procuring it to be discounted for his own benefit or for any other purpose than to take up notes at the Manhattan Bank, upon which the plaintiff was liable. In Buck v. Kent (3 Verm. R., 99), it was held in a case where the payee of a note, which ought to have been delivered up to the maker, sold and transferred it to a third person who afterwards sued the maker thereon and recovered judgment, that trover would lie by the maker agamst the payee to recover the amount of the note. Evans v. Kymer (1 Barn. Adolph., 528) is an authority in point in the king’s bench. A bill of exchange was drawn by one Nevett upon and accepted by the plaintiff for a specific purpose, viz: In order that it might be discounted, and that the proceeds might be applied in payment of two other bills drawn by Nevett upon and accepted by the plaintiff. That object was accomplished by other means, namely, by moneys furnished by the plaintiff, the acceptor. The bill remained in the hands of Nevett, subject to the order of the piaintiff. Afterwards Nevett delivered it to the defendant as security for his endorsing Nevett’s note *324 for his accommodation, the defendant at the time knowing the purpose for which the bill was made. It was held that trover would lie, and that the measure of damages was the amount of 'the bill. These cases are decisive in favor of the action; and the one last referred to shows that the rule of damages sanctioned by the superior court was correct.
It is objected that the complaint does not state that the defendants negotiated the note to a bona fide holder, in violation of the object for which it was made. It does allege that the defendant Mathews illegally and wrongfully took the note from the possession of James Jones & Co., and delivered it to the other defendant, and that they disposed of and converted it to their use. It was not under the former system, and is not, in my opinion, now, necessary do state the manner in which the defendant has converted property for which trover is brought; but the simple allegation that he has done so is sufficient. . Where it is once settled that negotiable paper in the hands of the maker or acceptor is the subject of an action of trover, the allegation that the defendant^ has converted it refers to some act by which such property thus situated could be converted.
There was no sufficient exception to the charge ; and as to the request to charge upon specific propositions, the matter proposed seems to me to be fairly covered by the instructions which the court gave, including ‘the points which he directed them to find specifically.
Upon the whole case, I am of opinion that the judgment ought to be affirmed.
Judgment accordingly