MICHAEL HYNES, Respondent, v. THOMAS E. PATTER-
SON, Executor, and CAROLINE D. ELY, Executrix of
DAVID J. ELY, Deceased, Appellants.

*Conversion of notes — the complaint in an action for, may both allege a tort and set up a claim for money had and received — when no demand for the notes is necessary — the fact that the wife of the maker of the notes pays them from property conveyed to her in fraud of the maker's creditors does not affect his damages — Measure of damages where the maker pays the notes by the transfer of real estate — money received by the maker for the loan of the notes need not be returned.*

Where notes have been made for a special purpose, and placed in the hands of one who, having knowledge of such purpose and receiving the notes under an engagement to apply them thereto, uses them for another purpose, he may be sued in an action in which the complaint contains the necessary averments to sustain the action, either as one in tort for a conversion, or on contract for money had and received.

Where the maker of the notes has been sued thereon, and has acquired possession of them by paying the judgment recovered thereon, it is not necessary to make any demand therefor before bringing suit against the person who misapplied them.

The fact that the judgment on the notes was paid by the transfer, by the plaintiff's wife, of real estate which the plaintiff had transferred to his wife in fraud of his creditors, does not prevent the plaintiff's recovering, as damages, the value of the real estate so transferred, which in such case is the proper rule of damages.

Under the agreement providing for the delivery of the notes in trust to the defendant, the plaintiff was entitled to, and had received, a certain sum for their use.

*Held,* that he was not bound to restore that sum before bringing suit for this misappropriation.

APPEAL by the defendants from a judgment, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the court before which the trial was had.

*John L. Logan,* for the appellants.

*B. F. Blair,* for the respondent.

BRADY, J.:

In August, 1876, one Joseph J. Bowman was desirous of purchasing a tract of land at East Haddam, Connecticut, which was then under foreclosure, and for that purpose entered into an agree-

ment with the plaintiff to the effect that the latter should loan him his notes for $11,224.75, and should receive for the loan of the notes ten per cent of their face value. Bowman was to procure the notes to be discounted and was to apply the proceeds thereof to the purchase. The property was to be conveyed to the defendant's testator, David J. Ely, who received the notes, as custodian from the plaintiff and Bowman, and it was to be bonded by Bowman to the extent of $50,000 and two-fifths of the bonds to be held in trust by Ely as security for the payment of the notes. It was also provided that the bonds were not to be given to Bowman until the last note due should be paid; and upon such payment, the other two notes having been paid, the bonds were to be given to Bowman; and further, that if Bowman failed to pay and meet the notes, or either of them, as they become due, then the bonds should be given to the plaintiff and become his sole and exclusive property, free from all claims, dues or demands. And it was further provided that if Ely failed to apply the moneys as agreed he was to be held responsible for the same.

The transaction seems to have contemplated the organization of a company, and the issuing of bonds to the amount named, secured by a mortgage of the property to be purchased. It is quite evident from the facts that the plaintiff declined to place the notes in the possession of Bowman or to consent to his receiving and applying the money to be raised upon them, and accepted the selection of the defendant's testator, who was a man of acknowledged responsibility, and who was to hold them until Bowman should procure them to be discounted. The notes were not discounted but were exchanged for personal property, with the design of converting it into cash and using the cash as originally agreed upon. This transaction was disastrous. Nothing was realized from the property thus purchased.

It is somewhat questionable whether there is any evidence in this case showing any real effort on the part of Bowman to procure the discount of the notes, whilst it is proved that within a very few days after the contract was made the defendant's testator delivered two of the notes, amounting to $7,726.59, to affirm in part payment for the purchase of a quantity of malt, the personal property already alluded to, and which purchase had been under consideration

for some time. And these notes were transferred, therefore, before maturity. When they became due, the plaintiff refused payment; whereupon a suit was brought upon them in this court against him and Bowman, and against two others as subsequent indorsers. The plaintiff and Bowman defended separately. The issues raised were tried before a jury, and a verdict for the plaintiff of $7,998.90 was rendered, and on April 23, 1877, judgment was entered against Hynes and Bowman for $8,227.86. In the meantime the plaintiff had transferred all his property to his wife; and Carter, the judgment-creditor, having assigned his judgment, his assignees instituted proceedings to set aside the transfer.

The plaintiff then employed counsel to negotiate a settlement with them, and the result was that Mrs. Hynes finally conveyed to them, by warranty deed, a piece of ground received from her husband, and they satisfied the judgment against Hynes, agreeing to reconvey the land to Mrs. Hynes upon the payment by her, at any time before March 1, 1881, of $8,227.86, with interest from April 23, 1877, besides other sums.

It appears that the plaintiff paid his counsel for their services in effecting that settlement, $500.

This action was commenced in April, 1879, against the defendants, to recover damages for the conversion of the two notes used in the purchase of malt (the third note not having been negotiated or used in any way).

Upon the trial, it would seem that the only question of fact about which there was any conflict of testimony, and indeed the only question submitted to the jury, was as to the value of the property conveyed by Mrs. Hynes in satisfaction of the judgment recovered upon the notes.

The jury found a verdict for the plaintiff of $3,500. The defendants appealed, and a few days afterward the respondent's attorney served upon the appellants' attorney a written consent to the entry of an order vacating the judgment appealed from, and directing a new trial, upon condition that such order be entered and served within thirty days from that date, which consent was accompanied by notice that if the respondent should fail to accept that offer, and to enter and serve an order thereon within thirty days, the respondent would move this court, at the next General Term, to

dismiss this appeal, and to award costs to the respondent and against the appellants, on the ground that they had unreasonably resisted payment of said judgment.

The appellants did not accept this offer, but, on the contrary, they expressly declined to do so.

The notes having been made for a specific purpose, and the defendants' testator having received them, not only with knowledge of the purpose for which they were created, but as a trustee thereof, and having permitted a diversion of them, subjected himself to liability for damages in an action which, under the old regime, would be regarded as an action of tort. (*Comstock* v. *Hier*, 73 N. Y., 269.)

It may be said in this case, as stated in that, that no right whatever to the notes, or any right of disposal thereof, was or could be acquired by the unauthorized delivery of them for a purpose for which they were not created. And it may also be said that the complaint in this case, as in that, contains the necessary averments to sustain the action in either form, *i. e.*, for a conversion of the notes, or for money had and received, which might be done as suggested in that action, the principle resting upon authority and being clearly elucidated by cases cited in the opinion of Allen, J. (See, also, upon the right of the plaintiff to maintain this action, *Murray* v. *Burling*, 10 Johns., 172; *Decker* v. *Mathews*, 12 N. Y., 313–319; *Thayer* v. *Manley*, 73 id., 305.)

It was not necessary that any demand should be made for the notes, as contended by the defendants' counsel, before the action was brought, because they were in the possession of the plaintiff, acquired by the payment of the judgment, as we have already seen, through the transfer of the real estate made by him.

It is no answer to this, to assert against the right to maintain the judgment, that the plaintiff having received the ten per cent provided for by the agreement for the use of the notes, was bound to pay it back or tender it prior to the commencement of the action. It was distinctly understood, that the ten per cent, amounting to $1,122.47, was a commission to be paid to the plaintiff for the loan of his notes, as appears from the receipt dated the 12th of August, 1876, signed by the plaintiff, in which it is stated that he received the sum from the defendants' testator, as custodian of himself and

Bowman, being the stipulated commission of ten per cent, to be paid to him on the loan of his notes, as set forth in the receipt of the defendants' testator bearing even date. The sum named was to be paid for the use of the notes, and although they were not used in the manner provided for, nevertheless they were used; and the plaintiff was obliged to pay two of them, as we have already seen, after such use. The plaintiff's duty under the contract in reference to them was fully performed when the ten per cent was paid. He had made and loaned his notes and what was paid was paid to him upon such performance. And as he has committed no violation of his contract, it would be an unheard of legal principle to declare in such a case as this, that before he could seek to protect himself and recover damages by action for a violation of the contract involving an act of conversion, he should be obliged to restore the compensation agreed upon and paid him for a service which he had rendered and completed. For this reason the defendants were not entitled to any credit for the ten per cent.

The learned justice presiding in the court below charged the jury upon the question of damages, that the plaintiff was entitled to such as he had sustained by reason of the diversion of his notes and the judgment thereon, and he said the question for them to determine was the value of the property transferred by Mrs. Hynes in settlement of that judgment.

There can be no doubt about this being the rule of damages. (*Comstock* v. *Hier*, *supra*.)

The proposition that the plaintiff could not avail himself of the transfer because Mrs. Hynes owned the property, is without any force. It is quite apparent that the property held by her was transferred after the notes were made, and it was, therefore, taken by her subject to the debts of the husband existing at the time of the transfer. The learned justice very properly said to the jury upon that subject, that the persons who held the judgment against him would have been entitled to file a bill in equity to reach this property, and indeed, any property which the plaintiff had transferred to his wife in fraud of his creditors, or voluntarily with a view to make a settlement upon her, which would inure to her benefit against those legitimate creditors who were entitled to the application of his property to the payment of his just debts.

There can be no doubt about that proposition. It has been declared by numerous decisions. The appropriation of the property, therefore, to the payment of these debts was doing nothing more than would have been decreed by a court of equity if application had been made for its judgment.

The several requests made to the court to charge were in antagonism to the views herein expressed, and therefore to the law of the case, and were properly rejected. Indeed, the appellants upon the argument seemed to rest their appeal upon two propositions, viz. (1), that the plaintiff could not recover in an action of tort, and (2), that the ten per cent to which reference has been made should have been deducted from any amount to be awarded the plaintiff. Neither of these propositions has been sustained; and as none of the exceptions presented for consideration are entitled to any further review, and as none of them were well taken, it follows that the judgment must be affirmed, with costs.

It is not deemed necessary to pass upon the propositions of the learned counsel for the respondent that the defendants should take nothing by their appeal, and that it should be dismissed because the respondent offered to grant them a new trial. If the examination of the case upon its merits had led to a different conclusion than that arrived at, it might be that the proposition would be entitled to serious consideration. But it is not necessary to express any opinion on the subject at present for the reason that without reference to the consent or offer to grant a new trial it is ascertained that the judgment should be affirmed, and therefore resort to the consent or offer is not necessary. The payment of the judgment seems to have been unreasonably resisted and the defendants should be charged with the costs of the appeal.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., BRADY and DWIGHT, JJ.

Ordered accordingly.